# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Diana Nadeau, individually and on behalf of the next-of-kin of John Nadeau, | ) ) ) ) |
| Plaintiff, | ) **ORDER GRANTING** |
| | ) **MOTION TO COMPEL** |
| vs. | ) ) |
| David Shipman, et. al., | ) Case No. 1:17-cv-074 |
| Defendants. | ) ) |

Before the court is plaintiff's motion to compel production of notes prepared by defendant Shipman following decedent's act of suicide that resulted in his death two days later. (Doc. No. 55). For the reasons set forth below, the motion is granted.

## I.   BACKGROUND

On the late evening hours of October 25, 2013, around midnight, John Nadeau was found laying on the floor in his cell at the Morton County Correctional Center with a piece of sheet around his neck. Nadeau was transported to the hospital where he was placed on a ventilator and determined to be brain dead. Later, he was removed from life support and expired on October 28, 2013.

Defendant Shipman was the Morton County Sheriff at the time and responsible for the Correctional Center. When Nadeau was found unresponsive in his cell, Shipman was called just after midnight on the early morning hours of October 26, 2018. He took charge of the activities that followed, including ordering what evidence would be preserved and arranging for the Bureau of Criminal Investigation, which is part of the North Dakota Office of Attorney General, to conduct an investigation.

1

In this action plaintiff is suing defendant Shipman along with other defendants for alleged violations of decedent's constitutional rights in connection with what authorities concluded was a jailhouse suicide. Shipman has been sued in both his individual and official capacities.

Before the court now is plaintiff's motion to compel production of five pages of notes taken by defendant Shipman (herein the "notes" or "Shipman notes") that have been withheld from discovery and identified as MC-0630 through MC-0634. The initial privilege log prepared by defense counsel dated January 8, 2018, stated that the notes were for October 26, 2013. (Doc. No. 57-5). After plaintiff's counsel deposed Shipman and filed the motion to compel, defense counsel amended the privilege log to reflect that the five pages of notes were for the dates of October 26, 28, and 29, 2013. (Doc. No. 61-1). The late disclosure of the fact the notes covered additional days prejudiced plaintiff's counsel when examining defendant Shipman about the factual basis for his claim of work product privilege. This is because, quite understandably, he limited questioning about the notes to October 26 based upon the representation in the initial privilege log that the notes were limited to that day. However, the fact plaintiff's counsel was prejudiced does not make a difference in terms of the outcome of the present motion for the reasons that follow. Hence, the court need not address whether defendant forfeited any claim of work-product privilege for the additional days of notes solely on account of this prejudice if the court determined the privilege did not apply on October 26.

The Shipman notes have been provided to the court for *in camera* review. Upon review of the notes, it does appear that the notes do cover the dates of October 26, 28, and 29 based on their content. There are also dates in the margins that segregate the notes by date, but the court was not able to determine whether the notations of the dates were contemporaneous with the making of the notes or were added later.

For purposes of this motion, it does not make a difference.

## II. DISCUSSION

### A. Governing law

Shipman's claim of work product is governed by Fed. R. Civ. P. 26(b)(3). To qualify for work-product protection, the material must have been prepared in anticipation of litigation. Fed. R. Civ. P. 26(b)(3)(A). The test, at least in the Eighth Circuit, was expressed in Simon v. G.D. Searle & Co., 816 F.2d 397 (8th Cir. 1987) where the court stated:

> Our determination of whether the documents were prepared in anticipation of litigation is clearly a factual determination:
>> [T]he test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation.
>
> 8 C. Wright & A. Miller, Federal Practice and Procedure § 2024, at 198-99 (1970) (footnotes omitted); see Diversified Indus., Inc. v. Meredith, 572 F.2d 596, 604 (8th Cir.1977), on rehearing, 572 F.2d 596, 606 (8th Cir. 1978) (en banc); The Work Product Doctrine, 68 Cornell L.Rev. 760, 844-48 (1983). The advisory committee's notes to Rule 26(b)(3) affirm the validity of the Wright and Miller test: "Materials assembled in the ordinary course of business * * * * or for other nonlitigation purposes are not under the qualified immunity provided by this subdivision." Fed.R.Civ.P. 26(b)(3) advisory committee notes.

Id. at 401. Finally, and particularly relevant in terms of the outcome of this motion, the party asserting the work-product privilege has the burden of demonstrating its applicability. See, e.g., PepsiCo, Inc. v. Baird, Kurtz & Dobson, LLP, 305 F.3d 813, 817 (8th Cir .2002) ("In order to protect work product, the party seeking protection must show the materials were prepared in anticipation of litigation, i.e., because of the prospect of litigation.").

### B. Analysis

Shipman's claim that the notes in question are protected work product is grounded upon two

points. The first is the following testimony Shipman gave during his deposition:

> Q. All right. Did you -- did you think you were going to get sued on October -- as of October 26, 2013, after the event, did you figure you were going to get sued?
>
> A. Sure.
>
> Q. Okay, Why?
>
> A. I think anytime you have an in-custody death, I – I think it's common practice.

(Doc. No. 57-6, Dep. of David Shipman, p. 9) (herein "Shipman Dep."). For the reasons that follow, this snippet of deposition testimony is not enough to support the claim that the notes are work product.

*First*, the question was not the best and, in any event, Shipman thereafter clarified or corrected what his state of mind was. Almost immediately after giving the above testimony, there was the following exchange:

> Q. Okay, Yeah. Tell me about that. I mean when you -- you know when something like this happens and you figured -- did you figure when you got the call that you were going to get sued?
>
> A. Not at the moment, no.
>
> Q. Okay. Did you -- but on 10-16 sometime did you figure that Morton County and/or you were going to get sued?
>
> A. On October 26, no.

(Shipman Dep., pp. 10–11). Then somewhat later, Shipman testified:

> Q. (Mr. NOEL CONTINUING) Well, let's narrow it down. If you're anticipating -- you think -- if you're anticipating litigation on 10-26-13 when you're at the facility to collect evidence, wouldn't it have been common sense to collect all phone calls?
>
> A. On- -- when I received the call that John Nadeau hung himself.

[exchange between attorneys omitted]

> Q. (MR. NOEL CONTINUING) Okay.

4

> A. The last thing through my mind was a lawsuit.
>
> Q. Okay.
>
> A. That was the last thing through my mind.
>
> Q. All right. When did you - - when did that thought enter your mind?
>
> A. I don't know.

(Id., pp. 19–20).

*Second*, Shipman gave his deposition testimony some 4½ years after the events took place. In a number of instances, he struggled to recall the particulars of what he did at the time of the incident. In fact, he could not even recall that he took the notes that are the subject of the motion. (Id., pp. 6–7). Weighing the entirety of Shipman's testimony, the court concludes his initial statement that, on October 26, 2013, he thought he might get sued was nothing more than an after-the-fact guess, even assuming this was what he intended to say and that his later testimony was not a clarification or correction.

*Third*, even if Shipman's initial answer should be given some weight notwithstanding his later testimony, the court concludes after weighing all of the evidence it was only a belief that litigation was a speculative possibility. See, e.g., Nodak Mut. Ins. Co. v. Case New Holland, LLC, No. 3:14-cv-86, 2015 WL 11438181, at *5 (D.N.D. June 16, 2015) (observing that the possibility of litigation can be foreseen for almost any incident and that "anticipation of litigation" requires more than an inchoate possibility of litigation); see generally Edna Selan Epstein, 2 Attorney-Client Privilege & the Work-Product Doctrine Part III.E2.B.2 (6th ed. 2017) (discussing what is a sufficient threat of litigation). Further, there is absent sufficient credible evidence suggesting that the taking of the notes was anything other than a matter of routine, particularly for someone like Shipman, who had been trained investigator prior to becoming

Sheriff. From all appearances, the notes would have been taken (and what expressed in the notes recorded) even if litigation was not anticipated. See, e.g., Nodak Mut. Ins. Co., 2015 WL 11438181, at *5 (noting that the anticipation-of-litigation requirement has both a "threat of litigation" and "motivational" component); 2 Attorney-Client Privilege & the Work-Product Doctrine Parts III.E2 & III.E2.C (same and also discussing tests courts have employed in addressing the motivational component).

*Fourth*, there is nothing in the notes themselves or their character which suggests that Shipman was contemplating litigation. That is, there is no mention of the possibility of litigation, much less a threat of suit by the Nadeau family members.

The second point that Shipman relies upon for his claim that the notes were taken in anticipation of litigation is the following testimony he gave at the end of his deposition in response to questioning by this own attorney:

> Q. Okay. You were asked some questions about what you did on October 26, 2013. Did you talk to the state's attorney's office on that day?
>
> A. Sometime throughout that morning, yes.
>
> Q. Okay. And who did you talk to?
>
> Q. My point of contact generally has been - - and I believe it was Brian Grosinger, I spoke with.
>
> Q. And he's an assistant state's attorney at Morton County?
>
> A. Correct.
>
> Q. And why did you contact Brian Grosinger and the Morton County State's Attorney's Office?
>
> A. Brian Grosinger and the state's attorney's office is my legal advisor, asking for legal advice to them - - from them.
>
> Q. And without getting to the nature of that legal advice, did Mr. Grosinger

6

provide you with some legal advice in regards to this suicide attempt by Mr. Nadeau?

    A.    Yes.

    Q.    Okay. And that was the same day of the suicide attempt on October 26, 2013?

    A.    Yes.

(Shipman Dep., pp. 127–28). The problems with this testimony supporting a claim of work product are twofold.

*First*, when considering Shipman's testimony as a whole, the court is not convinced his recollection with respect to when he may have talked to the State's Attorney's Office is necessarily accurate—particularly when he may have spoken to Office for the purpose of seeking legal advice as opposed to simply letting it know of the suicide attempt and keeping it updated as to the decedent's condition. For one thing, prior to the above exchange, Shipman gave the following testimony in response to questions by plaintiff's counsel:

    Q.    (MR. NOEL CONTINUING) On 10-26 - - Im not asking for the content of any conversations. On 10-26-13 did you talk to any lawyers?

    A.    I don't recall.

    Q.    Okay. On 10-26-13 did you talk to any insurance representative for the county?

    A.    I don't recall.

(Id., p. 13). Another is the Shipman Notes. The notes are a chronology of actions that Shipman took after being advised of Nadeau's ultimately successful suicide attempt, including, particularly, contacts that Shipman made with third persons. The Shipman notes do not reflect any contact or conversation with the Morton County State's Attorney's office during the time period purportedly covered by the notes—much less any suggestion that the notes were taken because of communications with Morton County State's

Attorney's Office with respect to the possibility of litigation.

*Second*, even if Shipman correctly recalled having conversations with the State's Attorney's Office during the time frame covered by the notes, these contacts initially may have simply been to let it know the incident had occurred and then later to keep it advised as to Nadeau's status. After all, the State's Attorney's Office was responsible for Nadeau's prosecution.

Further, even if the court was to credit Shipman's statements that he had contact with the State's Attorney's Office for the purpose of seeking legal advice during the time frame covered by the notes despite his inconsistent testimony, there is no evidence before the court that the advice he was seeking had to do with the possibility of litigation. And, during this time frame, there are other reasons for seeking legal advice that are equally, if not more, probable. For example, when the decedent was taken to the hospital, he was still under court-ordered detention. Shipman may have sought advice with respect to whether his deputies had to keep Nadeau under 24-hour guard even though he was immobile and brain dead. Still other possibilities are whether any decisions to take Nadeau off of life support necessarily had to involve Morton County, given that Nadeau was still under its custody, and whether Morton County would be responsible for his funeral costs for the same reason. In fact, the notes explicitly reflect that Shipman dealt with these latter two issues.

Finally, any suggestion that a contact with the State's Attorney's Office must necessarily have related to a concern over litigation is belied by Shipman's testimony as set forth above that, at least on October 26, 2013, a suit was the farthest thing from his mind, which is supported by the absence of any mention of a concern of litigation or contact with legal counsel in the Shipman notes.

### C. Conclusion

In summary, after weighing the evidence, the court concludes Shipman has failed to carry his burden that his notes were prepared in anticipation of litigation. And, while this is particularly true for October 26, 2013, it true for the other days, as well, given the paucity of evidence to support the claim of work product privilege as to those days.

### III. ORDER

Based on the foregoing,[1] plaintiff's motion to compel (Doc. No. 55) is **GRANTED**. Defendant Shipman shall produce the five pages of notes referenced in defendant Shipman's privilege log to plaintiff's attorney within five business days. The court declines to award costs and fees given that there was some basis for the withholding of the notes.

**IT IS SO ORDERED**.

Dated this 14th day of January 2019.

*/s/ Charles S. Miller, Jr.*
Charles S. Miller, Jr., Magistrate Judge
United States District Court

---

[1] While not a reason for its ruling, the court is puzzled why the defense expended the resources it did fighting over the five pages of notes. Unless the court is missing something, there are no "smoking guns." Rather, from all appearances, the notes are innocuous.